AO 91 (Rev. 11/11) Criminal Complaint │ AUSA Kirsten Moran (312) 722-2291

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DEVONTAY SHIELDS

CASE NUMBER: 24CR532

FILED
11/17/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. From on or about November 11, 2024 to on or about November 16, 2024, at Chicago and elsewhere, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1201(a)(1) and (d) | did attempt to unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold for ransom and reward any person, and willfully used a means, facility, and instrumentality of interstate and foreign commerce in committing, attempting to commit, and in furtherance of the commission of the offense |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

/s/ Wesley Andring (MDW w/ permission)
WESLEY ANDRING
Special Agent, Homeland Security Investigations (HSI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: November 17, 2024

_M. David Weisman_
*Judge's signature*

City and state: Chicago, Illinois

M. DAVID WEISMAN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, WESLEY ANDRING, being duly sworn, state as follows:

1. I am a Special Agent with the Homeland Security Investigations (HSI) and have been so employed for approximately 4 years. My current responsibilities include the investigation of criminal violations relating to criminal street gangs, narcotics trafficking offenses, including criminal violations of money laundering and federal controlled substance laws.

2. This affidavit is submitted in support of a criminal complaint alleging that there is probable cause to believe that DEVONTAY SHIELDS has committed the crime of attempted kidnapping, in violation of Title 18, United States Code, Sections 1201(a)(1) and (d). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging SHIELDS with attempted kidnapping, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, my training and experience, and information provided to me by other law enforcement agents and witnesses.

**PROBABLE CAUSE**

4. The United States, including Homeland Security Investigations conducted a criminal investigation regarding violations of Title 18, United States Code, Sections 1201(a)(1) and (d) (attempted kidnapping). As described further below, DEVONTAY SHIELDS attempted to kidnap a small child for ransom from Private School A in Fort Lauderdale, Florida.

**A. Background**

5. On or about November 11, 2024, a HSI source of information ("SOI-1")[1], contacted HSI special agents to notify them that SHIELDS wanted to meet with a federal cooperating defendant ("CD-1")[2], to obtain money to facilitate travel to south Florida to kidnap a small child for ransom. SOI-1 notified special agents that according to SHIELDS, Private School A, located in Fort Lauderdale, FL, could be the school from which the child may be abducted. The following photographs were

---

[1] SOI-1 is cooperating with the U.S. government upon SOI-1's own free will and in the hopes of third-party cooperation credit for CD-1, with whom he/she is close friends. SOI-1's cooperation does not stem from any charges filed against SOI-1. SOI-1 has cooperated on previous instances with the U.S. government, starting in approximately February of 2024. To date, SOI-1 has been paid $2,500 for his/her cooperation on a previous investigation. SOI-1 has prior convictions for manufacturing/dealing controlled substances, dangerous drugs, retail theft, aggravated unlawful restraint, and residential burglary.

[2] CD-1 is cooperating with the U.S. government in hopes of receiving sentencing cooperation credit for his convictions stemming from a case charged in the Southern District of Florida. CD-1 was charged with two counts of violating Title 18, U.S.C., Section 2423(b), travel with intent to engage in illicit sexual conduct with a minor; one count of violating Title 18, U.S.C., Section 2252(a)(1), transportation of child pornography; and one count of 18 U.S.C. Section 2252(a)(4)(B), possession of child pornography. CD-1 pled guilty on December 12, 2023 to two counts of violating 18 U.S.C. Section 2423(b), travel with intent to engage in illicit sexual conduct with a minor.

sent to HSI special agents by SOI-1, who received the communications from SHIELDS.



6. As referenced above, SOI-1 conveyed that SHIELDS communicated with SOI-1 using a telephone assigned call number (217) 799-XXXX (the "Subject Phone").[3] Based on my training and experience, the use of a cellular telephone is an instrumentality of

---

[3] SOI-1 conveyed to law enforcement that the number for SHIELDS is the Subject Phone, and SOI-1 has communicated with SHIELDS over the Subject Phone on prior occasions.

3

interstate commerce. The calls were not recorded, but the text messages have been preserved by law enforcement.

7. According to SOI-1, sometime during the evening of November 11, 2024, SOI-1 called CD-1 on speakerphone with SHIELDS present. This call was not recorded. SOI-1 notified CD-1 that SHIELDS wanted to meet with CD-1. SOI-1 told CD-1 that SHIELDS would be traveling north with SOI-1 the next day (November 12, 2024).

8. On November 12, 2024, HSI special agents were notified by SOI-1 that at approximately 11:25 a.m., SOI-1 would be departing to drive SHIELDS from Danville, Illinois to the Chicagoland area.

9. At approximately 2:11 p.m., SOI-1 notified HSI special agents that he/she drove SHIELDS to the Chicagoland area and that he/she took SHIELDS to a hotel located in Harvey, Illinois.

### B. SHIELDS Meets with CD-1 and SOI-1 on November 12, 2024

10. According to SOI-1, on November 12, 2024, SOI-1 departed the hotel where SHIELDS was residing. After leaving the hotel, SOI-1 and CD-1 met with HSI special agents.

11. After meeting with HSI agents, SOI-1 and CD-1 went to meet with SHIELDS. Prior to the meeting, agents searched SOI-1, CD-1, and SOI-1's vehicle for the presence of contraband and firearms, with negative results. Law enforcement outfitted SOI-1 and CD-1 with concealed audio recording equipment, and outfitted SOI-1's vehicle with concealed audio and video recording equipment, and observed SOI-1 and CD-1, inside of SOI-1's vehicle, travel to meet SHIELDS. Prior to their departure to meet SHIELDS,

SOI-1 placed a call to the Subject Phone stating they were about fifteen to twenty minutes away. SHIELDS did not verbally respond but after hanging up, text messaged "ok." I, along with other law enforcement agents, were present during the call and could hear both sides of the conversation.

12. At approximately 4:45 p.m. on November 12, 2024, HSI agents observed a black male believed to be SHIELDS (as the individual that matched identifying information from a Chicago Police Department photograph of SHIELDS) wearing a black hat, black jacket, and black pants, exit from the hotel and approach the vehicle SOI-1 was operating. HSI agents observed SHIELDS open the rear driver side door and enter the vehicle.[4] According to the audio recording, in summary, after initial greetings were exchanged, SHIELDS began describing a "lick" to CD-1.[5] During the conversation, SHIELDS stated "imma get me a little boy" (an individual whom SHIELDS did not fully identify). According to the audio recording, when CD-1 asked how much money SHIELDS needed, SHIELDS stated that he need "a G" (referring to $1,000).

---

[4] Following the meeting on November 12, 2024, SOI-1 confirmed that the individual observed departing from the hotel and that entered SOI-1's vehicle was SHIELDS.

[5] The conversation referenced below has been recorded and preserved. This affidavit does not notate every communication between SHIELDS, CD-1, and SOI-1. The following is a summary of the communication and may not include the entire communication. Where recorded conversations are discussed in this affidavit, the language that is quoted from the recorded conversations is based upon a preliminary review of the recorded conversations and not on final transcripts of the recorded conversations. Summaries and excerpts do not include all statements or topics covered during the course of the recorded conversations. At various points in the affidavit, I have included, either in brackets or summary form, my interpretation of words and phrases used in recorded conversations. My interpretations are based on the contents and context of the recorded conversations, events occurring before and after the conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement agents in this investigation.

13. According to the recording and in summary, SHIELDS also referenced a Greyhound bus and stated he knows people with cars to pick him up after his arrival, but also stated SHIELDS could fly as his mode of transportation to Miami, Florida. SHIELDS also stated in the recording that one of his homies would be the only one around to come get him if he took a bus. During the conversation, SHIELDS confirmed that he would be requesting a ransom of $100,000. SHIELDS stated he believed it would take approximately three or four days to receive the ransom. According to the recording, SHIELDS stated that he wanted to get the money and go down to Miami "tomorrow or Thursday."

14. At approximately 5:00 p.m. HSI agents observed SHIELDS exit the vehicle and enter the hotel. SOI-1 and CD-1 then departed the location.

15. After the meeting, agents searched SOI-1, CD-1, and SOI-1's vehicle for the presence of contraband and firearms, with negative results. SOI-1 and CD-1 stated that during the meeting, SHIELDS had shown SOI-1 and CD-1 a photograph on the Subject Phone which showed the tuition amount for a child attending Private School A.

16. On the same date, SOI-1 had a separate in-person conversation with SHIELDS, in which SHIELDS stated that he finished looking on the internet for locations to, in summary, "go get the other little shit that I need." This conversation was recorded. According to SOI-1, SHIELDS stated he wanted to go to a Target or Walmart. SHIELDS continued to say that when it's time to go down to Miami, he doesn't need to get anything down there.

17. According to SOI-1, at approximately 8:59 p.m. on the same evening, SOI-1 drove SHIELDS to a Target store in Homewood, Illinois and SHIELDS purchased two child toy items. While in the store, according to SOI-1 and in summary, SHIELDS asked a store employee where the guns were and SOI-1 asked why he needed that. SHIELDS replied, in summary, so the kid [referring to the kidnapped child] knew he had one. This conversation was not recorded. SOI-1 took a photo of the receipt and provided it to HSI agents. The receipt shows a purchase of two child toy items and a payment made in cash.

C. **November 13 - 16, 2024: SHIELDS Purchased a BB Gun and Zip Ties, and Further Discussed the Kidnapping Plan**

18. According to SOI-1, on November 13, 2024, SOI-1 drove SHIELDS from Illinois into Indiana, and SHIELDS purchased a BB gun from a Cabela's located in Hammond, Indiana. SOI-1 took a photo of the receipt and provided it to HSI agents. The receipt shows the purchase of a BB gun and payment that was made in cash.

19. According to SOI-1, on November 15, 2024, SHIELDS purchased zip ties from an AutoZone located in Chicago, Illinois. SOI-1 had a recorded in-person conversation with SHIELDS, who in summary stated he was trying get everything he needed because he is "trying to leave real soon." SHIELDS continued to state he is going to get "just a random little boy" and that he knew which age group. SHIELDS stated that he "is ready" and "getting everything I need for my little trip."

20. On November 16, 2024, at approximately 3:58 p.m. SOI-1 had an in-person conversation with SHIELDS. The conversation was recorded. During the conversation, SHIELDS stated that he made reservations for a hotel and a rental car. SHIELDS stated, "As soon as I touch down I'm getting to it" and continued to say, "I'm trying to

7

make sure I hear that over the TV before nighttime." SHIELDS stated that he was going to take the kid back to the hotel. SHIELDS stated that he would get paid because there are ways to "let his ass know." After the ransom is paid, SHIELDS stated he planned to drive straight back to Illinois. SHIELDS stated that "If it get too hot, basically I'mma get an Amtrak" and that "If I can't drive, get dropped off at the Amtrak, get my ticket and I'm gone." Based on my training and experience, I understood the phrase "get too hot" to refer to law enforcement pursuing SHIELDS for the kidnapping. When SOI-1 asked SHIELDS, "What you using me for?" SHIELDS responded in summary, "To get me the money" and confirmed that he wanted SOI-1 to pick up the ransom money and to meet back up, as well as to stay in contact with CD-1 and in case anything goes wrong.

### D. November 16, 2024: SHIELDS Purchases two one-way Amtrak tickets leaving Chicago for Miami, Florida

21. On November 16, 2024, SOI-1 drove SHIELDS to Walgreens, where according to SOI-1, SHIELDS added money to a card in his possession. Afterwards, SOI-1 notified law enforcement officials that SHIELDS purchased two one-way train tickets (one for SHIELDS and one for SOI-1) on Amtrak destined for Miami, Florida and that it would be departing Chicago, Illinois the same day. According to SOI-1, billing information for the train tickets, rental car and hotel showed they were paid by SHIELDS, with an email conformation sent to XXXXXXXXshieldsX@gmail.com. Thereafter, SOI-1 drove SHIELDS in SOI-1's vehicle to a family member's home. SOI-1 and SHIELDS then left from the family member's home for Union Station in Chicago.

22. At approximately 6:20 p.m. on November 16, 2024, law enforcement officials encountered SHIELDS at Union Station in Chicago, Illinois, attempting to board

8

the train departing to Miami, Florida, arriving in Miami on Monday, November 18. During the encounter, SHIELDS granted consent for law enforcement officials to search a green bag in his possession. During the search, law enforcement officials found a "Lankybox" stuffed children toy (Ages 3+ according to the labeling), a Teenage Mutant Ninja Turtles action figure (Ages 4+ according to the labeling), and self-cutting cable ties (zip ties).

23. Following law enforcement providing SHIELDS with his Miranda rights, SHIELDS waived those rights and agreed to speak to law enforcement. During the interview, in summary, SHIELDS stated that he arrived in the Chicagoland area from Danville, Illinois on Wednesday. SHIELDS stated that his brother-in law was going to take him to Miami, Florida. SHIELDS stated he was going because he had never been there before, and he wanted to see how it was. SHIELDS stated he was coming right back on Sunday, and that he had court on Monday so he had to be back. SHIELDS stated that his brother-in-law booked the reservation on SHIELDS' phone today. SHIELDS further stated that his brother-in-law gave him the toys and zip ties today at the hotel he was staying at.

24. SHIELDS later stated that he "did buy everything" including the toys and zip ties that were in his bag. SHIELDS further stated that he purchased a BB gun at Cabela's, but that it was for a nephew. SHIELDS denied knowing anything about the plan to kidnap a child on Florida. A later search of SOI-1's vehicle revealed a BB gun underneath the passenger seat.

9

### E. CONCLUSION

25. Based on the foregoing, I respectfully submit that there is probable cause to believe that, between on or about November 11, 2024 through November 16, 2024, DEVONTAY SHIELDS did attempt to unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold for ransom and reward any person, and willfully used a means, facility, and instrumentality of interstate and foreign commerce in committing, attempting to commit, and in furtherance of the commission of the offense, in violation of Title 18, United States Code, Sections 1201(a)(1) and (d).

FURTHER AFFIANT SAYETH NOT.

/s/ Wesley Andring (MDW w/ permission)
WESLEY ANDRING
Special Agent, Homeland Security Investigations

SWORN TO AND AFFIRMED by telephone November 17, 2024.

Honorable M. DAVID WEISMAN
United States Magistrate Judge

10